Alston Jones v. The State.

No. 13805.  Delivered January 7, 1931.
Rehearing Denied March 11, 1931.

The opinion states the case.

*J. S. Bracewell,* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for theft of hogs; punishment, two years in the penitentiary.

There are six bills of exception in the record.  Each has been carefully considered.  It is so well settled by the uniform decisions of this court that a bill will not be held to present error unless such error is made manifest by the recitals of the bill, that we deem it unnecessary to cite authorities.  It is not sufficient to set out that the defendant objected to certain testimony or a certain proceeding for reasons which may be

set out at little or much length, unless the bill also contains in some way a certificate of the facts relied upon by the appellant as sustaining the objections thus stated and from which this court may know that the matter complained of was erroneous. Each of the bills in this record seems open to the objection that not enough is stated in any of them to enable this court to say therefrom that the matter complained of was erroneous.

The facts are substantially that Mr. Jordy lived on a farm adjoining one belonging to appellant, who lived in Houston at the time of the transaction forming the basis of this prosecution. About the first of October Mr. Jordy turned his hogs out on the range. When he went to look for them in the early party of December seven black hogs said to average around 125 pounds in weight, belonging to the same litter, each marked under-slope in both ears,—were missing. Mr. Jordy said that in a barn on the premises of appellant he found "where hogs had been killed and blood was all around on the ground." He further said that he went over to Rollie Cansler's house and saw where some hogs had been cleaned, the hair of which hogs was black. He never did see the hogs after they were killed. The State introduced a negro man named York who testified that in the early part of December appellant and Rollie Cansler came to him and appellant wanted witness to go out and help clean some hogs; that they went to Rollie Cansler's house and there cleaned seven black hogs, each marked under-slope in both ears; that the heads of the hogs were cut off and left at Cansler's home, the carcasses of the hogs being carried the night after they were cleaned to Houston. York said he did not know the hogs were stolen but thought to the contrary. Mrs. Cansler, wife of Rollie, testified that on that same day appellant came to her house to see her husband, but she informed him that her husband and Eugene Wofford had gone away somewhere; that appellant waited until her husband and Wofford came back, and that the three of them then went away in a car together, coming back later with the carcasses of some dead hogs. She affirmed that these carcasses were left at her house, and that Wofford remained there to build a fire around a pot to heat some water; that her husband and appellant went away in a car and came back later with a negro man and more carcasses of hogs, the total number being seven; that said hogs were black; that they were cleaned at her house, and the heads cut off and left there; that the carcasses were carried away that night somewhere. Her mother who was present corroborated Mrs. Cansler in most of her testimony, and also said they,—apparently referring to appellant and the others,—said they bought the hogs from a negro. Four of the heads of the slain hogs were given to a Mr. Laski, who said that the hair of these hogs was black, and that they were marked with an underslope in each ear, which was the mark of Mr. Jordy, and also that

no one else gave said mark in that section but Jordy. This is the substance of the testimony. While not as satisfactory as it might be, we are not prepared to say that the jury was not warranted in believing appellant to have been connected with the original taking of the hogs while they were alive.

The judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In a motion which appeals strongly to us by reason of its fairness and understanding of the principles of law controlling in cases of this character appellant renews his contention that the testimony is not sufficient under the rules of circumstantial evidence to connect him with the original taking of the hogs. It is frankly conceded in the motion that cited cases are of little value because of the varying facts in each case. Notwithstanding this admission we have carefully examined the cases to which we have been referred.

About the only general conclusion to be derived therefrom is that it is the duty of this court in its reviewing capacity to determine whether there be any evidence in the record upon which the verdict of the jury might be based. In determining that question the evidence should be viewed in the strongest light from the standpoint of the State to ascertain if it makes the guilt of appellant reasonably certain. Taylor v. State, 87 Texas Crim. Rep., 330, 221 S. W., 611; Mason v. State, 108 Texas Crim. Rep., 452, 1 S. W. (2d) 283.

Sometime in the forenoon appellant appeared at the home of Rollie Cansler and inquired for him. His wife informed appellant that Rollie and one Wofford had gone away but would soon be back. After they returned appellant and the two others talked together for a time and then the three of them left. When they returned they brought with them some dead hogs. Wofford remained to build a fire around the pot for the purpose of heating water preparatory to dressing the hogs. Appellant and Cansler again went away. On this trip appellant got the negro York to aid in dressing the hogs and they went to the place where appellant had formerly lived where they got other dead hogs which they also took to Cansler's. Appellant's conduct and conversation was evidently such as to impress York with the idea that appellant was the owner of the hogs, for he testified that he thought they belonged to appellant. The trip to Houston with the hogs must already have been in contemplation when appellant first talked to York because he was promised that he would be taken to Houston. Considering appellant's activity in the matter it seems scarcely reasonable to infer that he entered into an unlawful enterprise regarding the hogs which had already been inaugurated by

Cansler and Wofford. The most reasonable hypothesis seems to be that the three of them were acting together in the enterprise from its inception and that appellant was one of the original takers of the hogs. We still feel that under the facts the jury was not without evidence upon which to predicate their verdict and that we would be unauthorized to disturb it.

The motion for rehearing is overruled.

*Overruled.*